Ellis J. Staley, Jr., J.
This is a proceeding under subdivision 2 of section 330 of the Election Law for an order directing the Rensselaer County Democratic Committee to reassemble and hold a new meeting for the purpose of the election of officers of that committee by reason of the fact that the meeting of said committee held on June 22, 1964 for the purpose of election of officers of said committee was characterized by such frauds or irregularities as to render impossible a determination as to who rightfully was elected at such meeting.
The petitioner was an avowed candidate for the office of chairman of the Rensselaer County Democratic Committee prior to the date of the meeting held on June 22, 1964. The respondent, Purcell, the former chairman of said committee, was elected to succeed himself as chairman of the Rensselaer County Democratic Committee at the meeting held on June 22, 1964. The petitioner seeks to have the election of the officers of the said committee, as certified to the Board of Elections, set aside, alleging the following irregularities as affecting the meeting:
1. That the meeting hall was wholly inadequate.
2. That the chairman falsely ruled that a motion approving the use of proxies in the elections at the meeting carried when it, in fact, failed.
3. That the chairman illegally refused to grant a roll-call vote on the proxy motion when it was demanded and,
4. That the chairman illegally failed to follow the provisions of section 12 of the Election Law requiring that the voting power of each member of the county committee shall be in proportion to votes cast in his or her election district for Governor at the last preceding gubernatorial election.
The meeting was held in a room on the second floor of the Metropolitan Life Insurance Building located at’ 504 Broadway *25 in the City of Troy, New York. The room was 40 feet by 18 feet and, in order to accommodate the members of the committee attending the meeting, 130 folding chairs had been placed in the room. Behind the folding chairs, as set in place, was additional standing room which could accommodate an estimated 30 to 40 people.
The meeting was held on a very warm evening and 186 committee members were in attendance in addition to spectators, members of the press and television. The petitioner presented a television movie of portions of the meeting. The record establishes that the meeting room was overcrowded, that some of the committee members remained in the hallway outside of the meeting room, and that general conditions were less than desirable. However, any member seeking recognition was permitted to have access to the floor. Testimony introduced by the petitioner also established the fact that committeemen were able to go in and out of the meeting room during the meeting. There is no evidence before the court to the effect that petitioner or anyone else ever made a request that the meeting be held in a larger hall. After the hearing on the application was concluded, the court viewed the premises where the meeting was held and, in my opinion, the premises met the test of adequacy for the size of the meeting required for the Rensselaer County Democratic Committee.
The petitioner asserts that the chairman falsely ruled that a motion approving the use of proxies in the elections at the meeting carried when it, in fact, had failed. The petitioner produced four witnesses, a television cameraman, a radio newsman and two newspaper reporters, three of whom testified that, in their opinion, the nays predominated on the vote and the fourth testified that he could not tell whether the yeas or the nays had predominated.
It is undisputed that the respondent ruled that motion had carried. It is undisputed that it was the duty of the respondent to rule on the motion and make a determination. If the petitioner felt that the respondent made an error in his determination, then it was his duty to demand a roll-call vote to resolve the question. The petitioner alleges that a demand for a roll-call vote was made on the proxy motion and that the respondent refused to grant a roll call on the issue upon such demand. One witness testified that he seconded such a motion. The respondent testified that he did not hear the seconding of the motion. The fact is, however, that the petitioner himself did not demand the roll call although he and two of his representatives were *26 placed in an advantageous position near to, or exactly in front of, the chairman. Petitioner and his supporters, who allegedly demanded the roll-call vote, obviously abandoned their motion when they walked out of the room and left the meeting. It is also significant that no motion was made to establish order in the room if, in fact, the room was permeated with noise and disorder. Having chosen to leave the meeting, rather than continue their efforts to obtain a roll-call vote, the petitioner and his followers must be deemed to have waived any right which they might have had to such a vote. There is no evidence of any probative value to the effect that a roll-call vote would have been denied if petitioner and his supporters had remained and persisted in their demand.
In the Matter of McGuinnes v. DeSapio (9 A D 2d 65, 74) the court stated as follows: “ The courts, even where finding claimed irregularities were de minimis or did not affect the result, have had occasion to advert to the conduct of contestants as acquiescence in and waiver of the alleged illegality. * * * Where available objections are not pressed, even in the absence of statutory requirements for timely objection, and it appears that parties are prepared to abide by the results, subsequent resort to such objections by the defeated faction are not looked upon with favor ’ ’.
The petitioner also alleges that the chairman illegally failed to follow the provisions of section 12 of the Election Law requiring a weighted vote by each member of the county committee. No testimony, however, was elicited before this court to the effect that a request was ever made by anyone for a weighted vote on any issue at the meeting. Had a roll call been granted, there is no testimony that the vote as a result of such roll call would not have been a weighted vote.
Basically, the testimony before this court establishes the following:
The petitioner and his supporters went to the meeting with the intent of nominating the petitioner as a candidate for the office of chairman of the Rensselaer County Democratic Committee. They thereafter left the meeting after becoming disgruntled with a ruling of the chairman of the meeting, with the intent of taking no further part in the meeting, thereby allowing the respondent to be nominated and elected to the office of chairman of the Rensselaer County Democratic Committee by acclamation of the members of the county committee who remained present. These remaining members, whether they numbered 30 as stated by the petitioner or 100 as stated by the respondent, *27 constituted a quorum for the transaction of business by the Rensselaer County Democratic Committee as required by section 7 of the by-laws of the said committee. The unanimous vote by these remaining members, whether by voice or by roll call, constituted a weighted vote within the provisions of section 12 of the Election Law.
It is, therefore, the opinion of the court that the petitioner, having abandoned his demand for a roll-call vote on the proxy motion, and having decided not to further participate in the meeting while a quorum under the rules of the committee remained present, voluntarily waived any right which he had in the conduct of such meeting and abandoned his candidacy, and is therefore not a person aggrieved as defined in section 330 of the Election Law and has failed to establish that the election had been characterized by such fraud or irregularities as to render impossible a determination as to who rightfully was nominated or elected at the meeting.
The petition must, therefore, be dismissed.